**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| DOUGLAS VISSCHER,<br><br>Plaintiff,<br><br>v.<br><br>INFOR (US), LLC and<br>KOCH INDUSTRIES, INC.,<br><br>Defendants. | Civil Action No. |

**COMPLAINT**
**JURY TRIAL REQUESTED**
**INJUNCTIVE RELIEF REQUESTED**

NOW COMES the Plaintiff, Douglas Visscher ("Plaintiff" or "Visscher"), by and through undersigned counsel, and complains against the Defendants, Infor (US), LLC ("Infor") and Koch Industries, Inc. ("Koch") (collectively, "Defendants"), as follows:

**JURISDICTION AND PARTIES**

1. This action arises under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* ("ADEA"), and the Maine Human Rights Act, 5 M.R.S. §§ 4551 *et seq.* ("MHRA").

2. Visscher is a United States citizen residing in the Town of Gray, County of Cumberland, State of Maine.

3. Infor is a global provider of industry-focused business software and related services.

4. Koch is a privately held multinational company that owns and controls a group of affiliated businesses.

5. At all relevant times, Infor was a wholly owned subsidiary of Koch.

6. Upon information and belief, Defendants shared common ownership and management, interrelated operations, and centralized control over material human-resources and labor-relations functions affecting Visscher's employment.

7. The documentary record reflects that Koch personnel participated in employment-related communications concerning Visscher. Among other things, a Koch Associate General Counsel provided the written explanation for Visscher's termination and responded to his request for his personnel file, and the employee-relations representative who defended the termination before the Maine Human Rights Commission used Koch contact information.

8. Upon information and belief, Defendants jointly exercised, or reserved the right to exercise, control over essential terms and conditions of Visscher's employment and acted as a joint employer and/or integrated enterprise for purposes of the claims asserted here.

9. At all relevant times, each Defendant was an "employer" within the meaning of the applicable statutes, and Defendants collectively employed substantially more than twenty employees.

10. This Court has subject-matter jurisdiction over Visscher's federal claim under 28 U.S.C. § 1331 and 29 U.S.C. § 626(c), and supplemental jurisdiction over his related state-law claim under 28 U.S.C. § 1367.

11. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because Visscher worked for Defendants from his home in Gray, Maine, and a substantial part of the events and omissions giving rise to his claims occurred in this District.

12. On December 4, 2025, Visscher timely filed a Charge of Discrimination with the Maine Human Rights Commission ("MHRC") and the United States Equal Employment Opportunity Commission ("EEOC"), alleging age discrimination arising from the same course of conduct alleged in this Complaint.

13. The charge was assigned FEPA Charge No. E25-0465-A and EEOC Charge No. 16B-2026-00053.

14. More than sixty days have elapsed since Visscher filed his charge with the EEOC.

15. On September 21, 2026, the MHRC issued Visscher a Notice of Right to Sue concerning his state-law claim, and Visscher received that notice before filing this action.

16. On November 5, 2026, the EEOC issued Visscher a Notice of Right to Sue concerning his federal claim.

17. Visscher has satisfied all conditions precedent to the claims pleaded in this Complaint, subject to completion of the filing-dependent allegation in the preceding paragraph.

## JURY TRIAL REQUESTED

18. Visscher requests a trial by jury on all claims and issues for which a jury is permitted.

## FACTUAL ALLEGATIONS

19. Infor hired Visscher on September 15, 2014, as a Solutions Consultant.

20. Throughout his employment, Visscher worked remotely from his home in Maine.

21. Effective July 1, 2024, Infor promoted Visscher to Director of Solution Consulting.

22. As Director, Visscher led a team of Solutions Consultants, supported customer and prospective-customer engagements, coached and developed team members, and coordinated discovery, demonstration, and value-messaging work.

23. Visscher earned an annual base salary of approximately $171,000 and was eligible for approximately $66,000 in annual variable compensation, for total annual compensation of approximately $237,000.

24. Mikael Forsman ("Forsman"), Infor's Vice President of Solution Consulting, directly supervised Visscher.

25. Lia McClure ("McClure"), Infor's Senior Vice President of Solution Consulting, was Forsman's manager, and Darcy McGough ("McGough") served as an Infor Human Resources Business Partner.

26. Visscher was born on February 4, 1959, and was sixty-six years old when Defendants terminated his employment.

27. Visscher performed his work satisfactorily over the course of more than eleven years with Infor.

28. Before September 2025, Visscher had never received a written warning or other formal discipline from Infor.

298. A 360-degree review covering January 1 through October 4, 2024, and acknowledged by Forsman in December 2024, documented favorable feedback concerning Visscher's leadership and his team.

30. In that review, Forsman wrote, among other things, "Great feedback to see team collaboration and knowledge sharing," "Great feedback on leading individual deal pursuits—more of that!," and "Again—great feedback from team, and on individual deals."

31. The review also identified ordinary development opportunities concerning leadership, value messaging, and presentation work, but it did not warn Visscher that his employment was in jeopardy and did not impose discipline.

32. The favorable review post-dated an October 2024 customer presentation that Infor later characterized as the beginning of a year-long pattern of serious performance problems.

33. In early 2025, Visscher told Forsman that he was considering retiring in or around April 2026.

34. Visscher did not make a final retirement decision. He also told Forsman that he would consider remaining at Infor longer in a non-management, individual-contributor role.

35. Visscher understood that employees in sales-related roles had to remain employed when quarterly bonuses were paid to receive those bonuses.

36. The fourth-quarter bonus was ordinarily paid at the end of February, so a January 31, 2026 retirement would have caused Visscher to forfeit compensation that he otherwise expected to receive.

37. On August 15, 2025—before Visscher provided any written retirement commitment—Forsman opened Job Requisition No. 46057 to replace him.

38. Forsman explained internally that he had opened the requisition “to find his replacement sooner vs later” and to have Visscher help the new person succeed before Visscher retired.

39. Between August 18 and August 20, 2025, Human Resources and finance personnel directed Forsman to obtain Visscher’s retirement date in writing before the requisition could advance, and Forsman responded that he would “get it written from Doug.”

40. On August 22, 2025, Forsman called Visscher and told him that he needed to send an email stating that he would retire on January 31, 2026, or “other unpleasant things might happen.”

41. Forsman said that he needed Visscher’s retirement announcement to obtain headcount approval and because the second quarter, beginning April 1, would be too busy to train a new manager.

42. Visscher had himself been promoted into management during the third quarter, which was typically busier than the second quarter, and he did not understand why an early January retirement date was necessary.

43. Concerned that he would face adverse consequences if he refused, Visscher sent the requested email later on August 22, 2025.

44. The email stated: “I plan to retire from my management position on Jan. 31, 2026. If another position is open that isn’t management, I would be interested in staying at Infor for a longer time.”

45. The conditional second sentence reflected that Visscher remained interested in continuing his employment with Infor rather than leaving the workforce.

46. The following morning, August 23, 2025, Visscher rescinded the retirement announcement.

47. Visscher wrote: “After reviewing with my family, I’ve decided to not retire on Jan 31 2026 and plan on continuing managing the process manufacturing team and driving towards making them the best SC team they can be. I have not made a decision on when I’ll choose to retire.”

48. On August 25, 2025, Forsman called Visscher and asked why he had changed his mind.

49. Visscher explained that he and his wife were not ready for him to retire because of their family’s needs, the economy, and the real-estate market, and he made clear that he had not chosen a retirement date.

50. Sixteen days after Visscher rescinded the retirement announcement, Defendants issued the first formal discipline of his eleven-year career with Infor.

51. On September 8, 2025, Forsman and McGough met with Visscher and gave him a Final Written Warning.

52. The warning referenced several events dating back as far as October 2024, including concerns about presentations, preparation for customer engagements, scheduling, communications, and team development.

53. Infor had not contemporaneously disciplined Visscher for the older incidents identified in the warning, placed him on a performance-improvement plan, issued a coaching memorandum, or given him a negative performance evaluation based on them.

54. The supporting material later submitted by Infor reflected discrete, context-specific exchanges rather than an established progressive disciplinary record. For example, one August 2025 email noted that Visscher left a session to catch a flight, another reflected a colleague's disagreement with Visscher's account of a customer meeting, and a third reflected criticism after Visscher directly asked an outside consultant why he had been excluded from future meetings.

55. The Final Written Warning nevertheless stated that improvement had to occur immediately and be sustained, and that additional discipline, including termination, could follow.

56. The chronology was unusual: the first written compilation of alleged problems spanning many months appeared only after Visscher declined to retire, while the contemporaneous 2024 review had recorded favorable feedback after at least one of the incidents later relied upon.

57. During the September 8 meeting, Forsman also asked Visscher to prepare seven employee "enablement plans" addressing roles, skills, training, and performance goals for members of Visscher's team.

58. Visscher told Forsman that he would complete the seven plans by the end of the day on Friday, September 12, 2025.

59. On September 12, Visscher submitted five of the seven plans.

60. Before the start of the next business day, Monday, September 15, 2025, Visscher submitted the remaining two plans.

61. Visscher completed the final two plans after urgent work matters prevented him from finishing them on Friday, and he sent them before Forsman began work for the week.

62. All seven plans were thus complete approximately two weeks before Defendants terminated Visscher.

63. Also on September 8, Visscher informed Forsman that he had applied for an internal Customer Success Executive position that did not involve the same management responsibilities.

64. Visscher's internal application was consistent with his repeated statement that he wished to remain employed at Infor and had not decided to retire.

65. On Friday, September 26, 2025, McGough sent Forsman talking points to use in terminating Visscher the following Monday.

66. The talking points stated that Defendants had "made the difficult decision to terminate" Visscher and directed Forsman to insert two examples: "Missing Enablement plans for team" and a scheduling issue concerning a subordinate named Jasmine.

67. By September 26, however, Visscher had submitted all seven enablement plans eleven days earlier.

68. On September 29, 2025, Forsman and McGough met with Visscher and terminated his employment, effective immediately.

69. During the meeting, Forsman told Visscher that he was being terminated because he had not completed the enablement plans on time and because one of his subordinates was not performing satisfactorily.

70. Upon information and belief, the subordinate referenced during the termination meeting remained employed by Infor.

71. On October 31, 2025, Koch Associate General Counsel Julie Elgar provided counsel with a written explanation stating that the termination was for “unsatisfactory job performance, including a failure to satisfactorily improve [his] job performance after being given an opportunity to do so.”

72. In its March 10, 2026 administrative position statement, Infor described a broader rationale: an asserted pattern of serious deficiencies across customer engagements from October 2024 through September 2025, allegedly causing client complaints, lost opportunities, and reputational damage.

73. The rationales changed in scope over time—from two examples in the pretermination talking points, to a missed deadline and subordinate performance at the termination meeting, to a generalized year-long pattern in the administrative proceeding.

74. The cited enablement-plan issue was disproportionate to the action taken: Visscher submitted five of seven plans by his proposed Friday deadline and the final two before the following workday, yet Defendants terminated an eleven-year employee with no prior formal discipline.

75. The timing was also close: Defendants issued a final warning sixteen days after Visscher rescinded his retirement announcement and terminated him thirty-seven days after the rescission.

76. Defendants had begun the process of replacing Visscher before he committed to any retirement date and then sought written confirmation of an accelerated date that would have caused him to forfeit expected bonus compensation.

77. The actions of Forsman, McGough, Elgar, and other management and human-resources personnel described above were undertaken within the scope of their roles and are attributable to Defendants.

78. The sequence of retirement pressure, advance replacement planning, sudden discipline, a predecided termination based in part on already-completed work, and shifting explanations supports the inference that Defendants used performance concerns as a pretext for removing an older employee who declined to retire on the timetable selected for him.

79. Visscher's age was a motivating factor and the but-for cause of Defendants' decision to terminate his employment.

80. Defendants acted intentionally and, with respect to the ADEA, willfully because they knew that age discrimination was unlawful or acted with reckless disregard for whether their conduct violated federal law.

81. Since his termination, Visscher has continued to seek employment and has undertaken reasonable efforts to mitigate his losses.

82. As a direct and proximate result of Defendants' conduct, Visscher has lost wages, variable compensation, benefits, and other employment-related compensation, and has suffered other compensable harm.

## COUNT I: ADEA – AGE DISCRIMINATION

83. Paragraphs 1 through 82 are incorporated by reference.

84. At all relevant times, Visscher was at least forty years old and was protected by the ADEA.

85. Visscher was qualified for his position and performed his work at a level that met Defendants' legitimate expectations.

86. Defendants subjected Visscher to adverse employment actions, including a final written warning and termination.

87. Defendants discriminated against Visscher because of his age, and Visscher's age was the but-for cause of his termination, in violation of 29 U.S.C. § 623(a)(1).

88. Defendants' violation of the ADEA was willful within the meaning of 29 U.S.C. § 626(b).

89. As a result, Visscher is entitled to all legal and equitable relief available under the ADEA, including back pay, benefits, reinstatement or front pay, liquidated damages, prejudgment interest where permitted, attorneys' fees, and costs.

**COUNT II: MHRA – AGE DISCRIMINATION**

90. Paragraphs 1 through 89 are incorporated by reference.

91. At all relevant times, Visscher was protected from age discrimination by the MHRA.

92. Defendants were employers and/or persons subject to the MHRA and were responsible for the acts of their managers, agents, and human-resources personnel.

93. Defendants discharged and otherwise discriminated against Visscher because of his age, in violation of 5 M.R.S. § 4572(1)(A).

94. Defendants' conduct was intentional.

95. Defendants acted with malice or reckless indifference to Visscher's rights under Maine law.

96. As a direct and proximate result, Visscher is entitled to all legal and equitable relief available under the MHRA, including back pay, benefits, reinstatement or front pay, compensatory damages, punitive damages, interest, attorneys' fees, and costs.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that the Court enter judgment in his favor and grant the following relief:

A. Declare that Defendants' conduct violated Visscher's rights under the ADEA and the MHRA;

B. Permanently enjoin Defendants, their officers, agents, employees, successors, and all persons acting in concert with them from engaging in unlawful age discrimination;

C. Order Defendants to reinstate Visscher to an appropriate position or, if reinstatement is not feasible, award front pay;

D. Award back pay, lost base wages, lost variable compensation and bonuses, lost benefits, and other employment-related compensation;

E. Award lost future earnings and other equitable monetary relief caused by Defendants' unlawful conduct;

F. Award liquidated damages under the ADEA for Defendants' willful violation;

G. Award compensatory damages under the MHRA in an amount to be determined at trial;

H. Award punitive damages under the MHRA in an amount to be determined at trial and subject to applicable law;

I. Award prejudgment and post-judgment interest;

J. Award nominal damages where appropriate;

K. Award reasonable attorneys' fees, litigation expenses, and costs;

L. Order appropriate corrective relief concerning Visscher's personnel records and Defendants' stated reasons for his termination;

M. Require appropriate training, notice, and other measures reasonably necessary to prevent future age discrimination;

N. Grant such other equitable and injunctive relief as the Court deems just and proper; and

O. Grant such other and further relief as may be just and proper.

Dated: November 13, 2026

/s/ Martin P. Tartre
Martin P. Tartre
Attorney for Plaintiff

**EMPLOYEE RIGHTS GROUP**
92 Exchange Street, 2nd Floor
Portland, Maine 04101
Tel. (207) 874-0905
Fax (207) 874-0343
Martin@EmployeeRightsLaw.Attorney